UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| TIMBERLAND MACHINES, : | |
| AND IRRIGATION, INC. : | CIVIL ACTION NO. |
| Plaintiff, : | 08-cv-1947 (JCH) |
| v. : | |
| : | |
| ECHO, INC. ET AL. : | APRIL 13, 2009 |
| Defendants. : | |

**RULING RE DEFENDANTS' MOTION TO DISMISS, TRANSFER VENUE, OR STAY
(DOC. NOS. 14 & 16)**

**I.      INTRODUCTION**

The plaintiff, Timberland Machines and Irrigation, Inc ("Timberland"), brings this action against the defendant, Echo, Inc. ("Echo"), seeking recovery of more than $15 million based on Echo's wrongful termination of its franchise relationship in violation of the Connecticut Franchise Act ("CFA"), Unfair Trade Practices Act ("CUTPA"), and a breach of the implied covenant of good faith and fair dealing.  It also brings this action against defendant, Lawn Equipment Parts Company ("LEPCO"), alleging tortious interference with a contract as well as violations of CFA and CUTPA.  Timberland alleges unjust enrichment by both defendants.  Echo and LEPCO now move to dismiss the Complaint because the filing of the Complaint violates the first filed rule, and, in the alternative, to transfer venue pursuant to 28 U.S.C. § 1404.  For the following reasons, defendants' Motion to Dismiss is denied as moot and the Motion to Transfer Venue is granted.

**II.     FACTS**

Timberland is a Delaware corporation with a principal place of business in

Connecticut. Echo is an Illinois corporation with a principal place of business in Illinois. Echo and Timberland entered into a distributor sales and service agreement ("Agreement") on August 14, 2004. See Compl., Exh. A. Pursuant to the Agreement, Timberland acted as an Echo franchisee: Echo sold outdoor products to Timberland, who in turn resold the products as a non-exclusive distributor. Timberland's sales area included New England and New York.

Section 9.9 of the Agreement contained a forum clause selection clause which states in relevant part:

> THIS AGREEMENT SHALL BE DEEMED TO HAVE BEEN MADE IN THE STATE OF ILLINOIS, AND SHALL BE CONSTRUED ACCORDING TO THE LAWS OF THAT STATE, WITHOUT REGARD TO CHOICE OF LAW PRINCIPLES . . . . Distributor shall bring any legal proceeding arising out of this Agreement only in the federal or state courts located in the counties of Cook or Lake in the State of Illinois.

Compl. Exh. A. (caps in original);

On October 21, 2008, Echo notified Timberland that it was terminating the Agreement effective sixty days thereafter, in accordance with section 8.2 of the Agreement. Id. Exh. B. On November 25, 2008, Timberland did not pay Echo certain amounts alleging that it had no obligation to do so. On November 28, 2008, Timberland's counsel sent an email to an Echo executive alleging that "no grounds exist to justify [Echo's] termination of its relationship with Timberland." Trombetta Aff. ¶ 2. On December 11, 2008, Echo sued Timberland in the United States District Court for the Northern District of Illinois ("Illinois Action") alleging that Timberland defaulted on payment to Echo and seeking to recover damages in the amount of $3,400,306.97. The Illinois Action was brought in the Northern District of Illinois on the basis of diversity of citizenship.

2

On December 23, 2008, Timberland sued Echo and LEPCO in this matter. On this same day, LEPCO, a Pennsylvania corporation with a principal place of business in Pennsylvania, who had been a non-exclusive distributor of Echo products for approximately thirty years, assumed responsibility as the non-exclusive Echo distributor in the territory that Timberland formerly covered. On December 31, 2009, Timberland filed an Answer, Affirmative Defenses, and Counterclaim in the Illinois Action. The counterclaim mirrors Timberland's claim against Echo in the present case. Timberland included LEPCO in this matter alleging that LEPCO benefitted from Echo's termination of Timberland by acquiring all of the sales volume and $3.8 million in gross profit.

Timberland states that it did not commence this suit prior to December 23, 2008, out of concern that doing so could hinder the sale of Echo products. The franchise relationship did not expire under December 21, 2008 and Timberland wanted to sell as many products as possible before that date and felt that a lawsuit would hinder sales revenues. Zeytoonjian Aff. ¶ 4.

In response to a request for injunctive relief by Echo, on January 5, 2009, Echo and Timberland entered into a stipulated Order in the Illinois Action. Timberland agreed to turn over all new and unused inventory to Timberland by January 30, 2009. As part of the Order, Echo agreed to issue Timberland a credit against its indebtedness within thirty days of the inventory's return.

On January 12, 2009, Echo moved in the Illinois Action to dismiss Timberland's counterclaims for breach of the implied covenant of good faith and fair dealing, violations of CUTPA, and unjust enrichment in the Illinois Action. On March 5, 2009, Judge Charles P. Kocoras granted Echo's Motion to Dismiss the counterclaim on the basis that

3

they failed to state cognizable claims.

## III. ANALYSIS

Defendants argue that Timberland's filing of the instant action violates the first filed rule because the Illinois Action was filed first, on December 11, 2008. Timberland counters that the first filed rule is inapplicable because the circumstances of this case meet the exceptions to the first filed rule.

Generally, in the Second Circuit, "where there are two competing lawsuits, the first suit should have priority." Employers Ins. Of Wausau v. Fox Entm't Group, Inc., 522 F.3d 271, 275 (2d Cir. 2008). The first filed rule is a "presumption that may be rebutted by proof of the desirability of proceeding in the forum of the second-[filed] action." Id. "Courts should only apply the rule, if in fact the suits are duplicative, that is, if both cases have identical or substantially similar parties and claims." Veritas-Scalable Inv. Prods. Fund, LLC v. Fb Foods, Inc., 238 F.R.D. 339, 343 (D. Conn. 2006) (internal citations and quotations omitted). Here, the counterclaims in the Illinois Action are identical to the claims made by Timberland against Echo in this action. The only difference is that LEPCO is not a party in the Illinois Action. However, the claims against LEPCO arise out of the same facts and concern "similar parties and claims." Id. Accordingly, the first-filed rule is applicable to this case.

There are two exceptions to the first-filed rule: "(1) where the balance of convenience favors the second-filed action, and (2) where special circumstances warrant giving priority to the second suit." Employers Ins., 522 F.3d at 275. (internal quotations and citations omitted). Thus, while the first-filed rule is not an "invariable mandate", id., the second action will not be permitted to go forward unless the balancing

4

of conveniences tip in favor of the second action, or unless there are special circumstances which justify giving priority to the second. Timberland argues that the facts of this case satisfy both of these recognized exceptions. Defendants disagree.

> A. Special Circumstances

Special circumstances are rare. Employers Inc., 522 F.3d at 275. In fact, the Second Circuit has only identified a limited number of such circumstances including "where the first-filed lawsuit is an improper anticipatory declaratory judgment action . . . filed in response to a direct threat of litigation that gives specific warnings as to the deadlines and subsequent legal action," and "where forum shopping alone motivated the choice of the situs for the first suit." Id. at 275-6. (internal citations omitted) (emphasis in original).

Echo did not file an "anticipatory judgment action" so the first circumstance is not present in this case. However, Timberland argues that Echo engaged in forum shopping because it filed the Illinois Action prematurely because the termination of the franchise relationship was not to occur until December 21, 2008. However, Timberland admits to withholding payment from Echo on November 25, 2008, which became the subject of the Illinois Action. In order for forum shopping to be considered a special circumstances "the first-filing plaintiff must engage in some manipulative or deceptive behavior, or the ties between the litigation and the first forum must be so tenuous or de minimus that a full 'balance of convenience" analysis would not be necessary. . . ." Id. at 275. There is nothing in the record indicating any of these factors, nor that forum shopping alone motivated the filing of the suit in Illinois, especially in light of the forum selection clause in the Agreement.

5

Timberland also argues that it should not be penalized for acting "prudently" by waiting to file this action until after the franchise relationship was terminated. Mem. in Opp. at 7. While there may be good reason for waiting to file the second action, such action does not meet one of the recognized "special circumstances." Because there are no special circumstances present, a balancing of the conveniences should be applied. Id. at 276.

B.  Balance of Convenience

A balancing of the conveniences requires a consideration of the ties between the forum of the first-filed action and the litigation. Id. at 275. The factors relevant in this analysis are "essentially the same as those considered in connection with motions to transfer venue pursuant to 28 U.S.C. §1404(a)." Id. These factors include:

> "(1) the plaintiff's choice of forum, (2) the convenience of witnesses, (3) the location of relevant documents and relative ease of access to sources of proof, (4) the convenience of parties, (5) the locus of operative facts, (6) the availability of process to compel the attendance of unwilling witnesses, [and] (7) the relative means of the parties."

D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 107 (2d Cir. 2006) (citing Albert Fadem Trust v. Duke Energy Corp., 214 F. Supp. 2d 341, 343 (S.D.N.Y. 2002)). The balance of convenience weighs in favor of the Illinois Action.

"A plaintiff's choice of forum is ordinarily afforded great weight, except where the operative facts have little connection with the chosen forum." Roller Bearing Co. of Am., Inc. v. Am. Software, Inc., 570 F. Supp. 2d 376, 389 (D. Conn. 2008) (internal quotations omitted). To determine the locus of operative facts the court must look to the "site of events from which the claim arises." Alden Corp. v. Eazypower Corp., 294 F.Supp.2d 233, 237 (D. Conn. 2003) (quoting Distefano v. Carozzi N.Am., Inc., No. 98 CV 7137,

6

2002 U.S. Dist. LEXIS 23042 (E.D.N.Y. 2002)). Notably, deference to the plaintiff's choice of forum is "inappropriate" in the face of a forum selection clause. Sherman Street Assocs., LLC v. JTH Tax, Inc., No. 3:03-CV-1875, 2004 U.S. Dist. LEXIS 21102 at *25-26 (D. Conn. 2004). Further, the weight given to the forum selection clause is increased when the language in the clause is mandatory rather than permissive. Id. at *20.

Timberland's claims center around its franchise relationship with Echo and whether Echo terminated that relationship without good cause. First, the Agreement that created the franchise relationship contains a forum selection clause stating that Timberland consents to jurisdiction in Illinois. The language in this clause is mandatory. Compl. Exh. A. (stating "this agreement shall be deemed to have been made in the state of Illinois . . . . Distributor shall bring any legal proceeding arising out of this Agreement only in the federal or state courts . . . in Illinois) (emphasis added).[1] Second, the termination of the franchise relationship was made by Echo executives in Illinois. Obringer Aff. ¶ 2. Timberland's performance of the Agreement, selling Echo products, took place in Connecticut as well as six other surrounding states. Thus, while performance did not take place in Illinois, it also did not exclusively take place in Connecticut. The locus of operative facts with respect to LEPCO have little connection

---

[1] Timberland argues that the forum selection clause is unenforceable in light of Connecticut's public policy to protect its local franchises as demonstrated by its adoption of the CFA. Mem. in Opp. at 12. It relies on Sherman Street Assocs., for the proposition that the enforcement of a forum selection clause would frustrate this public policy. However, the Sherman court explicitly stated that the CFA does not by itself render a forum selection clause in a franchise agreement void. 2004 U.S. Dist. LEXIS 21102 *11.

It bears noting also that the forum selection clause is not dispositive, see id. at *10, and is merely a factor in considering a motion to transfer venue pursuant to section 1404(a).

to Connecticut. While the Complaint alleges that LEPCO illegally obtained Timberland's sales area, which includes Connecticut, the allegations center around LEPCO's relationship with Echo which can be attributed to acts taking place in either Pennsylvania or Illinois, their respective places of business, but not Connecticut. Accordingly, in considering plaintiff's choice of forum and the locus of operative facts, these factors weigh in favor of Illinois, especially in light of the mandatory forum selection clause.

Convenience of the witnesses is "the single-most important factor" in determining where to transfer a case. Sherman Street Assocs., 2004 U.S. Dist LEXIS 21102 at *15. In considering the kinds of witnesses that would be necessary for trial, "convenience of non-party witnesses is a more important factor." Id. at 15-16. Timberland states that "the testimony of non-party witnesses could be important in this matter." Mem. in Opp. At 17. Such vague language is not persuasive. In fact, a party moving under section 1404(a) must "specify the key witnesses to be called and must make a general statement of what their testimony will cover." Factors Etc., Inc. v. Pro Arts, Inc., 579 F.2d 215, 218 (2d Cir. 1978), rev'd on other grounds, Factors Etc., Inc. v. Pro Arts, Inc., 652 F.2d 278 (2d Cir. 1981). While sales representatives from Timberland's sales territory, including Connecticut, may be required to testify, no "key witnesses" have been identified. Similarly, Echo has not identified any non-party witnesses as key witnesses. However, Timberland does allude to certain customers located in its sales territory that may need to testify. Zeytoonjian Aff. ¶ 8. Timberland states that these dealers and customers may need to testify as to "Timberland's efforts as to the sale of Echo products, what Timberland sold, training received by each dealer, and from whom they received it." Id. Echo states that its own executives and employees would be able to

testify to these matters, although it is difficult for the court to understand how. Because Timberland's statements about these witnesses are vague, the court is unable to determine how material these witnesses will be. Further, the reason consideration of non-party witnesses is so important is because a "district court cannot require a person is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business" to appear before it." Sherman Street Assocs., 2004 U.S. Dist LEXIS at *17-18 (quoting Fed. R. Civ. P. 45(c)(3)(A)(ii)). While some of these potential witnesses may reside in Connecticut, others may reside in Timberland's other territories which range from Maine to New York. Thus, even in Connecticut, the court may not be able to compel the attendance of these witnesses. Accordingly, this factor favors neither party.

With respect to the remaining factors, the court finds that the location of the relevant documents is a non-issue in today's world because copy machines and electronic based discovery make it much easier to obtain documents at a distance. Further, the convenience of the parties does not weigh in favor of one party or the other as witnesses will have to come from, at a minimum, Connecticut, Illinois, and Pennsylvania. Finally, Timberland argues that their financial hardship as a result of the termination of the franchise relationship does not favor transfer to Illinois. The court is not persuaded by this argument. While it may be true that the circumstances surrounding this case created financial difficulty for Timberland, regardless of what this court decides, the fact remains that the Illinois Action is pending. As such, transferring this case to Illinois, where the actions could be consolidated, may be more cost efficient for all parties involved as it would avoid any duplication.

In weighing the balancing of conveniences, the factors tip in favor of the first-filed action. The court however, is not inclined to dismiss the action because the two suits are not entirely identical. The instant action includes an additional defendant, LEPCO. However, because LEPCO has represented that it will not object to being added to the Illinois Action, the issues are substantially similar, and the factors for determining the balance of conveniences and a motion to transfer are identical, the court will deny the motion to dismiss and grant the motion to transfer the action to the Northern District of Illinois.[2]

## IV. CONCLUSION

For the forgoing reasons, defendants' Motion to Transfer Venue (Doc. No. 16) is accordingly **GRANTED** and the Motion to Dismiss or Stay (Doc. No. 14) is **DENIED**. The Clerk is directed to transfer this case to the United States District Court for the Northern District of Illinois.

**SO ORDERED.**

Dated at Bridgeport, Connecticut this 13th day of April, 2009.

Janet C. Hall
United States District Judge

---

[2] It bears noting that Timberland argues that a district court may only transfer the case into a district where the case may have originally been brought pursuant to 28 U.S.C. 1404(a). Indeed section 1404(a) states that "a district court may transfer any civil action to any other district or division where it might have been brought." Accordingly Timberland argues that this case could not have been brought in Illinois because LEPCO would not be subject to personal jurisdiction. Mem. in Opp. at 8-9. Defendants argue that LEPCO would be subject to personal jurisdiction. The court need not resolve this matter as LEPCO has consented to jurisdiction in the Northern District of Illinois.