UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |   | |
|---|---|---|---|
| ECHO, INCORPORATED, | ) | | |
| | ) | | |
| Plaintiff/Counter-Defendant, | ) | | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| TIMBERLAND MACHINES & IRRIGATION, INC., | ) | 08 C 7123 | |
| | ) | | |
| Defendant/Counter-Plaintiff, | ) | | |
| | ) | | |
| TIMBERLAND MACHINES & IRRIGATION, INC., | ) | | |
| | ) | | |
| Plaintiff, | ) | 09 C 2673 | |
| | ) | | |
| vs. | ) | | |
| | ) | | |
| LAWN EQUIPMENT PARTS COMPANY, | ) | | |
| | ) | | |
| Third-Party Defendant. | ) | | |

## **MEMORANDUM OPINION**

CHARLES P. KOCORAS, District Judge:

This matter comes before the court on the motion of Defendant Lawn Equipment Parts Company ("LEPCO") to dismiss three counts of the complaint of Plaintiff Timberland Machines & Irrigation, Inc. ("TMI") for failure to state a claim. Defendant Echo, Inc. ("Echo") moves for an award of attorneys' fees and other expenses incurred in connection with the transfer of this case to our court from the District of Connecticut.

For the reasons set forth below, the motion to dismiss is denied; the motion for attorneys' fees is granted in part and denied in part.

## BACKGROUND

Echo is an Illinois manufacturer of outdoor power equipment. In August 2004, TMI, a Connecticut company, contracted with Echo to sell and service Echo's products in Maine, New Hampshire, Vermont, Massachusetts, Rhode Island, Connecticut, and New York.

> Paragraph 9.9 of the agreement states:
>
> This agreement shall be deemed to have been made in the State of Illinois, and shall be construed according to the laws of that state, without regard to choice of law principles. [TMI] consents to the jurisdiction of any court...within the counties of Cook or Lake in the State of Illinois with respect to any legal proceedings arising out of this Agreement...[TMI] shall bring any legal proceeding arising out of this Agreement only in [those courts]. In the event [TMI] institutes any legal proceedings in any other court...it shall assume all of [Echo's] costs in connection therewith, including, but not limited to, reasonable attorneys' fees.

The relationship continued until October 2008, when Echo informed TMI that it was terminating the agreement sixty days thereafter. On December 11, Echo filed suit in this court, alleging that TMI had not paid for goods delivered to it. On Saturday, December 20, the agreement terminated, and LEPCO immediately assumed the sales territory previously held by TMI. The next day, TMI filed the instant complaint in federal court in Connecticut. Against Echo, it asserts statutory and common-law claims; against LEPCO, it asserts tortious interference with contractual relations, unjust

enrichment, and violation of the Connecticut Unfair Trade Practices Act ("CUTPA"). Pursuant to a motion filed by Echo and LEPCO under 28 U.S.C. § 1404(a), the Connecticut court transferred the case to this court in April 2009.

LEPCO now moves to dismiss the three counts of the complaint directed at it pursuant to Fed. R. Civ. P. 12(b)(6). Echo moves for $53,759.25 in attorneys' fees and $1,898.73 for other expenses incurred in conjunction with the motion to transfer the case from Connecticut to Illinois.

## LEGAL STANDARDS

### A. Motion to Dismiss for Failure to State a Claim

Fed. R. Civ. P. 12(b)(6) evaluates the legal sufficiency of a plaintiff's complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In ruling on a motion to dismiss, a court must draw all reasonable inferences in favor of the plaintiff, construe all allegations of a complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Bontkowski v. First Nat'l Bank of Cicero*, 998 F.2d 459, 461 (7th Cir. 1993); *Perkins v. Silverstein*, 939 F.2d 463, 466 (7th Cir. 1991). To state a claim on which relief can be granted, a plaintiff must satisfy two conditions: first, the complaint must describe the claim in sufficient detail to give the defendant fair notice of what the claim is and the grounds upon which it rests; and second, its allegations must plausibly suggest that the plaintiff has a right to relief, raising that possibility above a speculative level. *EEOC v. Concentra Health*

*Servs.*, 496 F.3d 773, 776 (7th Cir. 2007); *see also Ashcroft v. Iqbal*, — U.S. —, 129 S. Ct. 1937, 1950 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007). The court will apply the notice-pleading standard on a case-by-case basis to evaluate whether recovery is plausible. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1083 (7th Cir. 2008).

**B. Motion for Attorneys' Fees and Expenses**

Under the so-called "American rule," a party to a lawsuit pays its own attorneys' fees. However, a party can be required to pay the fees of its opponent pursuant to a provision of a statute, a rule of procedure, or prior agreement of the parties. *See*, *e.g.*, 42 U.S.C. § 1988; *West Lafayette Corp. v. Taft Contracting Co., Inc.*, 178 F.3d 840, 842 (7th Cir. 1999); Fed. R. Civ. Proc. 37(a)(4)(A).

With these principles in mind, we turn to the parties' motions.

## DISCUSSION

**A. Motion to Dismiss for Failure to State a Claim**

The claims at issue arise out of state law and are before this court pursuant to our diversity jurisdiction, after a somewhat unusual procedural history. In light of those facts, we must examine whether a choice-of-law analysis is necessary in order to determine what matters must be included in the complaint with regard to the two common-law claims. Because LEPCO was not a party to the agreement between TMI

and Echo, the forum selection clause it contains does not control this issue with regard to the claims against LEPCO.

Following a transfer under 28 U.S.C. § 1404(a) initiated by a defendant, the transferee court follows the choice-of-law rules of the transferor court. *Ferens v. John Deere Co.*, 494 U.S. 516, 519, 110 S. Ct. 1274, 1277 (1990); *see also Van Dusen v. Barrack*, 376 U.S. 612, 639, 84 S. Ct. 805, 821 (1964). Connecticut, like Illinois, follows the rule that a choice of law analysis is only necessary when the laws of the various states with an interest in the litigation actually conflict. *See Walzer v. Walzer*, 376 A.2d 414, 421 (Conn. 1977); *Haymond v. Statewide Grievance Comm.*, 723 A.2d 821, 826 (Conn. Super. Ct. 1997), *aff'd*, 723 A.2d 808 (Conn. 1999); *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007).

For the two common-law causes of action asserted against LEPCO, the laws of Connecticut and Illinois do not diverge. *See Solomon v. Aberman*, 493 A.2d 193, 196-97 (Conn. 1985) (tortious interference with contractual relations); *HPI Health Care Servs., Inc. v. Mt. Vernon Hosp., Inc.*, 545 N.E.2d 672, 677 (Ill. 1989) (same); *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 521-22 (Conn. 1994) (unjust enrichment); *HPI Health Care*, 545 N.E.2d at 678-79 (same). Consequently, the analysis that follows applies the common principles embraced by both states' law.

*1. Tortious Interference with Contractual Relations*

A properly pled claim for tortious interference with contractual relations must assert the existence of a contractual relationship between the plaintiff and a third party, of which the defendant has knowledge. *Solomon*, 493 A.2d at 196-97; *HPI*, 545 N.E.2d at 677. The complaint must go on to allege that the defendant intentionally interfered with the third party's performance under the contract and that the plaintiff incurred actual loss because of the defendant's interference. *Solomon*, 493 A.2d at 196-97; *HPI*, 545 N.E.2d at 677. To constitute actionable interference, the behavior of the defendant must be unlawful, malicious, or otherwise unjustified. *Blake v. Levy*, 464 A.2d 52, 54 (Conn. 1983); *Swager v. Couri*, 395 N.E.2d 921, 928 (Ill. 1979).

Here, TMI has alleged that it had a contract to sell and service Echo's products from August 2004 until December 2008. The complaint states that LEPCO and TMI are competitors and that their sales territories are geographically adjacent. Those allegations raise a plausible inference that LEPCO was aware of the contract between Echo and TMI. The complaint then states that LEPCO engaged in intentional activity to position itself to take over TMI's sales territory after Echo terminated its relationship with TMI. Specifically, LEPCO offered more advantageous terms to Echo and built a new warehouse facility that would accommodate the increased activity generated by the new business from TMI's former territory. The complaint goes on to allege that LEPCO undermined TMI's relationship with Echo and induced Echo to terminate its

contract with TMI in violation of the Connecticut Franchise Act ("CFA") to allow LEPCO to absorb TMI's former sales area, which is immediately adjacent to that historically occupied by LEPCO. According to TMI, it made $3.8 million in annual gross profit from its business in Echo products; now that revenue is going to LEPCO. Each of the elements of the tort are therefore covered by the complaint's allegations.

In arguing that the complaint is not legally sufficient, LEPCO makes much of the pleading standard set forth in *Twombly* and reiterated in *Iqbal*, arguing that the allegations of the complaint are insufficiently detailed to paint a definitive picture of insidious meddling on its part. We do not read *Twombly* and *Iqbal* as establishing a standard whereby a plaintiff, to survive a 12(b)(6) motion, must in every case recite an elaborate set of factual allegations. Rather, these cases elucidate that a cookie-cutter approach will not suffice when a court is asked to examine the amount of detail necessary to give a defendant fair notice of a claim against it and to plausibly suggest that the plaintiff has a right to relief. Like its codefendant Echo, LEPCO opposes the assertion that Echo violated the CFA, i.e., acted unlawfully, when it terminated its contract with TMI. It asserts that the activities described within the complaint are more plausibly construed as consisting merely of lawful competition. Undoubtedly, LEPCO's interpretation of the events set out in the complaint is plausible and TMI will not be entitled to relief if LEPCO's actions prove to be nothing more than lawful competition. However, the facts alleged in the complaint could also plausibly indicate

unacceptable business practices if TMI can ultimately prove a violation of the CFA and a prospective intention with corresponding action on LEPCO's part to persuade Echo to violate the statute. To be sure, the level of elaboration required to prove these contentions will be much greater than what is currently contained in the complaint, but at this stage of the litigation we are examining only the legal sufficiency of TMI's complaint, not evidence offered to show liability that can be assessed for weight or quality.

On balance, we are satisfied that Count V contains enough detail to put LEPCO on notice of a cognizable claim for relief. Accordingly, the motion to dismiss Count V is denied.

*2. Unjust Enrichment*

A cause of action for unjust enrichment arises in situations where fairness will not allow one party to retain a benefit obtained at the expense of another. *Hartford Whalers Hockey Club v. Uniroyal Goodrich Tire Co.*, 649 A.2d 518, 521 (Conn. 1994); *HPI*, 545 N.E.2d at 678-79. It provides a broad and flexible remedy, the availability of which will generally be factually dependent, examining the specific circumstances and conduct of the parties to the dispute. *Hartford Whalers*, 649 A.2d at 521, 522. Though a variety of situations can present issues of unjust enrichment, Illinois and Connecticut both recognize that it can result where a defendant, through wrongful conduct, procures

a benefit from a third party that would have otherwise gone to the plaintiff. *See HPI*, 545 N.E.2d at 679 (citing *Harper v. Adametz*, 113 A.2d 136, 139 (Conn. 1955)).

As described in greater detail above with regard to the tortious interference claim, TMI asserts that LEPCO obtained a benefit, in the form of the revenue from TMI's former territory, from Echo through unlawful conduct, by encouraging Echo to violate protections given to TMI by the Connecticut legislature. Whether Echo's actions were in fact unlawful and the extent of LEPCO's involvement in bringing those actions about are questions properly left for a time after proof has been fully developed. For purposes of the current motion, TMI's allegations pass muster under the *Twombly*/*Iqbal* standard and dismissal of Count VI is therefore not appropriate.

3. CUTPA

Under CUTPA, no person is permitted to use unfair methods of competition or unfair or deceptive acts or practices when conducting trade or commerce. Conn. Gen. Stat. § 42-110b(a). Connecticut courts examine three factors to determine whether a practice is unfair. *Hartford Elec. Supply Co. v. Allen-Bradley Co., Inc.*, 736 A.2d 824, 843 (Conn. 1999). *Inter alia*, a practice will qualify for that label if it offends public policy as established by statute, if it is unethical or unscrupulous, and if it causes substantial injury to competitors. *Id.* at 842-43. The number of factors needing to be present varies depending on the strength of the individual components, *e.g.*, a strong showing on just one is enough as is a weaker showing on all three. *Id.* at 843.

In setting out its theory of liability on Count VII, TMI relies on the public policy of Connecticut embodied within the protections provided by the CFA.[1] Though LEPCO could not directly break that law, if TMI can show that LEPCO was instrumental in bringing about a violation of the statute, that could be seen as running afoul of the public policy set out in the legislatively provided protection. Such behavior could safely be labelled unethical or unscrupulous, and the $3.8 million of profits TMI has alleged that has gone to LEPCO instead of it certainly would qualify as a substantial injury to a competitor. Consequently, we conclude that TMI's complaint sufficiently pleads a cause of action under CUTPA and the motion to dismiss Count VII is denied.

**B. Motion for Attorneys' Fees**

As stated earlier, under ¶ 9.9 of the parties' agreement, if TMI violates the terms of the forum selection clause of that paragraph, it is obligated to pay Echo's costs incurred in conjunction with the improperly sited legal proceedings, including reasonable attorneys' fees. There can be no question that the U.S. District Court for Connecticut is not a federal court in Cook or Lake County, Illinois, so the filing there was in violation of the forum selection clause. Echo asserts that it incurred $55,657.98

---

[1] We note that though the CUTPA claim TMI asserted against Echo has been dismissed, that outcome was dictated by the contractual choice of Illinois law made by TMI and Echo. Because LEPCO was not a party to that agreement, its provisions have no like effect on TMI's CUTPA claim against LEPCO.

in fees and costs as a result of the breach of the forum selection clause, so we turn to an examination of the reasonableness of the amounts requested.

According to the submissions filed in support of the amounts requested, a partner, an associate, and a paralegal worked on the motion to dismiss or transfer the case to this court from Connecticut. The partner and the associate have special expertise in franchise law and commercial litigation, and their typical hourly billing rates are $550 and $325, respectively. On matters requiring counsel's specialized knowledge, these rates are defensible; however, the motion at issue here pertains to a procedural matter well within a more general competence level. Consequently, we find a reasonable hourly rate for the work done to be $400 for the work of the partner and $275 for the work of the associate.

With regard to the hours actually worked, Echo represents that the partner spent 36.2 hours working on the briefs and oral argument for the motion, the associate logged 118.35 hours, and the paralegal put in 4.4 hours at $170 per hour. Having examined the activities described within the submitted time records, we conclude that the amounts worked by the partner were slightly excessive and reduce them to 31 hours. For the associate, 61 hours would be a reasonable figure for the time required to accomplish the tasks he completed on this matter. The amount claimed to have been done by the paralegal is consistent with the effort required for her assigned tasks. After these adjustments are made, the resulting total comes to $29,923.

The additional expenses requested consist of $23.10 in messenger fees, $1,739.83 for computerized legal research, and $135.80 for a transcript of a court hearing. Although the second item has been categorized as an "expense," because it is intimately related to the work of the attorneys, we find it akin to the direct legal fees and therefore subject to the same requirement of reasonableness that is applied to the fees. The billed amounts indicate that $480.27 of the amount was research done for the 24-page initial brief; nearly three times that amount was claimed for the 11-page reply. The intricacy of the legal arguments made, the length of the subject briefs, and the fact that the attorneys would have already been familiar with the underlying law from their work on the initial memorandum in support convince us that the amount charged for research for the reply brief is not reasonable and it is accordingly reduced by $1000. The resulting overall expenses total $898.73. Adding the new fee and expense amounts yields a final figure of $30,821.73; that amount represents Echo's costs incurred in connection with the Connecticut action for which TMI will be responsible if ¶ 9.9 was operative at the time that the case was filed. The motion is granted with respect to Echo's request to have costs determined.

TMI contends that it is premature to require payment of any amount under ¶ 9.9 as the issue of Echo's alleged breach of the agreement has yet to be resolved. Echo contends that the one has nothing to do with the other, *i.e.*, that TMI must reimburse Echo for the Connecticut case costs regardless of whether Echo is found to have

breached the agreement. Echo also argues that TMI is claiming that it violated the CFA, not the terms of the agreement. We are not persuaded by Echo's positions.

On the first point, the agreement provides for severability of its provisions if one or more is found to be invalid by a judicial or administrative declaration. However, there is no indication that the terms of Paragraph 9.9 will apply even in the event of a material breach by Echo. Without such language, that paragraph is subject to the general rule that a material breach of a contract by one party may thereafter release the other party from its contractual obligations. *Mohanty v. St. John Heart Clinic*, 866 N.E.2d 85, 95 (Ill. 2006). The question of whether a breach is material is one of fact, and whether it releases the nonbreaching party from all obligations is similarly dependent on the particular circumstances of each case. *Id.* at 96.

On the second argument, if the CFA applies, the effect is to rewrite the provision of the contract permitting Echo to terminate the agreement without good cause. Therefore, if TMI can establish that the CFA so applies and that the termination was not for good cause, the agreement as well as the statute would be violated.

Because the factual underpinning necessary to examine whether Echo's actions in terminating the agreement released TMI from performing in compliance with the terms of the agreement thereafter, we cannot yet definitively state that TMI is contractually obligated to pay the award detailed above. Consequently, the motion is denied with respect to imposing an immediate obligation to pay the amounts described

herein; the resolution of that issue must await a final determination of the merits of TMI's claims against Echo.

## CONCLUSION

Based on the foregoing analysis, LEPCO's motion to dismiss [49] Counts V-VII of TMI's complaint is denied. Discovery will proceed on those claims in accordance with the schedule set by this court for the other claims of this case on August 19, 2009 [63]. Echo's motion for an award of attorneys' fees [47] is granted in part and denied in part as set forth in this opinion.

                                                 */s/ Charles P. Kocoras*
                                                 Charles P. Kocoras
                                                 United States District Judge

Dated:     August 26, 2009